IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RUTH REFFKIN,

    Plaintiff,

v.

NEW YORK LIFE INSURANCE,

    Defendant.

No. C 04-04953 CRB

**MEMORANDUM AND ORDER**

In this ERISA action, plaintiff Ruth Reffkin ("Reffkin") challenges defendant's termination of her long term disability benefits. As the parties agree that the standard of review is de novo, the Court is required to conduct a bench trial on the administrative record. See Kearney v. Standard Ins. Co., 175 F.3d 1084, 1094-95 (9th Cir. 1999) (en banc). After carefully reviewing the administrative record and the parties' submissions, and having had the benefit of oral argument, the Court finds that plaintiff is not totally disabled within the meaning of the ERISA plan. This Memorandum and Order constitutes the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a).

## THE ADMINISTRATIVE RECORD

Reffkin was employed by New York Life Insurance Company ("New York Life") as an Associate General Manager at its office located at 70 Washington Street in Oakland, California. In 1994 she stopped working due to what she and her treating physician have

variously described as "occupationally induced asthma," and "sick building syndrome." She applied for long term disability benefits, stating that she had originally had an asthma attack in 1989, but that her symptoms had become exacerbated by environmental factors and she could no longer work at 70 Washington Street or any building with similar allergens.

### A. Benefit history

Defendant paid Reffkin benefits beginning on May 17, 1995, the first date she was eligible under the policy. In August 1995, she resumed work at her home as part of a rehabilitative employment program. During this period she received rehabilitative benefits rather than long term disability benefits. Long term disability benefits were reinstated in August 1996 and continued until defendant discontinued them as of January 27, 2004 on the ground that Reffkin is no longer totally disabled.

### B. Plaintiff's statements and activities

In July 1996, plaintiff requested reinstatement of her long term disability benefits from defendant on the ground that she could not work in a closed office environment with windows that do not open. A vocational consultant interviewed Reffkin in October 1996 in connection with her application. Reffkin disclosed that she did, in fact, have a window in her office at 70 Washington. She explained that the reason she had stopped working in 1994 was that the building was being remodeled, and the remodeling had caused her respiratory problems. Although the remodeling was completed before she stopped working, she claimed that a restaurant downstairs from where she worked began remodeling, again causing her respiratory problems that made her unable to work.

After her long term disability benefits were resumed, Reffkin did not again seek work. In 1998, however, she ran for election to the Berkeley Rent Stabilization Board. On her candidate statement she claimed that she currently worked as a life insurance agent.

Reffkin completed a Claim Questionnaire in November 2003. She claimed that she suffers from "environmental allergies" and, in particular, allergies to substances found in offices and other commercial spaces, such as chemicals, molds, formaldehyde and fragrances. That same month, Reffkin was videotaped (as part of a surveillance conducted

2

by the claims administrator) smoking cigarettes, including two within one hour, without any visible discomfort, as well as attending yoga classes in a commercial building.

Reffkin's medical records through October 2003 reflect that she reported to Dr. Tufft that she does not smoke. Reffkin does not deny that she smokes on occasion. She claims that she rolls her own cigarettes which use a "natural" tobacco to which she is not sensitive

### C. Plaintiff's medical records

#### 1. Plaintiff's treating physician, Dr. Tufft

Dr. Tufft performed two allergy screens on Reffkin in 1988 and 1989. The results for both tests showed Reffkin is extremely allergic to animals, but the tests were negative for allergies to tree, weed, mite/mold and grass. Despite these results, in a November 1989 letter to defendant Dr. Tufft reported that Reffkin is highly allergic to grasses, dust, dog and cat dander. In November 1994, after Reffkin had stopped working, Dr. Tufft opined that Reffkin could perform her usual work. In December 1994 he estimated that Reffkin could return to work in March 1995, provided she did not work in "that building," that is, 70 Washington, Oakland. Again in January, and in February 1995, he certified that Reffkin could not work at her office at 70 Washington, but that she could work out of her home. In a February 1995 report Dr. Tufft stated that Reffkin could work at another location; he explained that her disability was totally as a result of her exposure to her particular office. Again, in March 1995, he certified that Reffkin was not permanently disabled and could work at a different work site. In May, June and July 1995, Dr. Tufft certified that Reffkin could return to work in July 1995. A May 1995 allergen test showed her allergic to animals (cats/dogs) and house dust. On July 19, 1995, after Dr. Tufft had issued his July certification, Reffkin wrote Dr. Tufft explaining that she had been approved for long term disability benefits through August 1, 1995 because at that time she was going to open her own office at home.

During this period--November 1994 through September 1995--Dr. Tufft saw Reffkin in the office on a monthly basis. He apparently did not run any additional tests on Reffkin

3

other than the May 1995 allergy test. He did not send her to see any specialists. His certifications appear to be based entirely on what Reffkin relayed to him.

When Reffkin decided to reapply for long term disability benefits, Dr. Tufft began to certify Reffkin as permanently disabled. He certified that she could not work in any closed environment with allergens to which she is sensitive. He issued these certifications from October 1996 through September 2003. In an April 2001 report, he stated broadly that her condition is exacerbated by allergens found in the workplace. During this period he did not run any additional tests on Reffkin and he did not refer her to any specialists, such as a pulmonologist, for ongoing treatment.

In May 2004, during the pendency of Reffkin's appeal, Dr. Tufft provided defendant with recent lab test results which showed that Reffkin has class three reactions to housedust and a sensitivity to isocyanate, a substance apparently found in most carpeting. Dr. Tufft further stated that smoking is not the cause of Reffkin's disability, and that Reffkin's yoga classes are beneficial for her breathing. He also included the results of a pulmonary function test from a Dr. Clayton. The test showed severe airway obstruction, but also noted that "[p]atient effort was erratic which makes it impossible to adequately evaluate the flow volume loops."

### 2. Independent examining physician Dr. DeMeo

In September 1995, Reffkin's insurer under a different policy had Reffkin examined by Dr. Anthony DeMeo, a specialist in allergy, immunology and internal medicine. A pulminary function test revealed very mild airways obstruction and an allergy test was positive for grasses and cats, and slightly positive for English plantain and olives. Based on his exam, testing, and review of her medical records, Dr. DeMeo concluded that Reffkin is not totally disabled and could perform her regular occupation at her former office. He recommended that she avoid irritant fumes in the work place as well as outside the work place, and that she should open a window if the need arises. Reffkin's office at 70 Washington had a window that could be opened. He also concluded that she should avoid working in buildings that are newly remodeled, but that her former office at 70 Washington

4

would not qualify as "newly remodeled." "There is no evidence that she has any permanent disability from her asthma or her exposure to irritants in the work place and I feel that her prognosis is good."

### 3. Reviewing physicians

Dr. Oyeobe Taiwo, a physician board certified in occupational medicine, reviewed Reffkin's medical records in December 2003. He concluded that the records showed mild to moderate asthma and did not identify any allergen specific to her last office environment as a cause for her symptoms. Based on the lack of any medical evidence, as well as Reffkin's physical activity and smoking, he concluded that Reffkin could perform sedentary work in an office environment free of exposure "to respiratory irritants like dusts, fume, vapors or smoke. She would also require workspace with adequate ventilation."

Amy Hopkins, a physician board certified in occupational medicine, reviewed Reffkin's medical records in early 2004, after Reffkin appealed the January 27, 2004 termination of her disability benefits. Dr. Hopkins concluded:

> While [Reffkin] may have had an asthma exacerbation in one specific building in 1994, this certainly cannot be extrapolated to imply that she is unable to work in any location, regardless of conditions. This file does not objectively support the presence of any medical condition or conditions of a nature or severity to prevent [Reffkin] from working in any environment as long as it is not overly dusty or dirty. Ordinary office building type occupations would not be expected to cause any undue functional impairment.

Dr. Hopkins based her conclusion on the following findings, among others: the medical records do not document any significant asthma and do not evidence any specific workplace allergens; Reffkin has never been referred to a specialist, either a pulmonologist or occupational medicine physician; since smoking is far more toxic than an office environment, Reffkin's claim of being unable to work in an office is not credible; and, although Reffkin does have documented allergies to trees and grass, she is able to walk among such allergens without any visible discomfort.

Following Reffkin's submission of additional evidence in May 2004, defendant had a a physician specializing in occupational and environmental medicine, Claudia Hix, review the new evidence and Reffkin's file. She, too, concluded that Reffkin could work in an

5

office building provided she is not exposed to excessively dusty or dirty work environments. She questioned the validity of the most recent pulmonary test result in light of the report of "eratic patient effort;" according to Dr. Hix, guidelines require three tests with consistent patient effort in order for the overall test results to be valid.

### D. Labor market surveys

Defendant commissioned a labor market survey in December 1996. The vocational consultant assumed that Reffkin could not work in an office with windows that do not open and concluded that "the environmental issue does not seem to easily [sic] mitigated."

A second labor market survey was conducted in November 2002. The vocational specialist assumed that Reffkin would have to avoid "exposure to irritant fumes and newly constructed or remodeled buildings," but nonetheless found 15 available jobs within 50 miles of Reffkin's home, of which four paid wages comparable to her former position.

## STANDARD OF REVIEW

The ERISA long term disability policy at issue provides benefits to an employee who is "totally disabled" as follows:

> An employee shall be considered totally disabled if during a period of 6 consecutive months from the beginning of his qualifying period he is continuously unable to perform any and every duty pertaining to his employment, and if at the end of said 6 month period and during the continuance thereafter of his disability, he is continuously prevented from engaging in any and every employment, occupation or business for compensation, gain or profit, for which he is, or may become, reasonably fitted by education, training or experience.

The parties agree that this Court shall review defendant's decision that Reffkin is no longer totally disabled de novo. They also agree that the Court's review should be limited to the administrative record. The question for the Court is whether Reffkin is entitled to benefits based on the evidence in the administrative record, without giving any deference to defendant's decision. See Kearney 175 F.3d at 1094.

## DISCUSSION

The Court finds that Reffkin's medical condition does not prevent her from working in an office environment, including a "closed" environment; therefore, she is not totally disabled within the meaning of the plan.

6

First, Dr. Tufft, the only physician to have concluded that Reffkin cannot work in an office environment, is not credible. The administrative record does not include any objective medical evidence to support Dr. Tufft's opinion. There are no test results that show Reffkin reacting to allergens found solely, or even mostly, in office environments, or even that she reacted to any specific agents in her former office at 70 Washington. The 1989 allergy test showed only that Reffkin is allergic to grass, tree and animals. A 1995 allergy test added house dust. The only other test in the record was performed in April 2004, after Reffkin's benefits were terminated. Reffkin tested positive for housedust, and the result for isocyanate was slightly elevated.

Moreover, Dr. Tufft's original opinion was that Reffkin was highly allergic to a specific allergen at her office at 70 Washington; he opined that she could work in a different building. A little over a year later he changed his opinion without explanation and without any additional tests. In sum, there is no objective medical evidence in the record to support Dr. Tufft's opinion that Reffkin cannot work in any closed office environment.

Second, if Reffkin's condition is so severe that she cannot work in any office environment one would have expected her to have been followed by a specialist such as a pulmonologist or occupational health physician. She has not; instead, Dr. Tufft is the only physician she has seen regularly for the last ten years.

Third, again, if Reffkin's condition is so serious that she cannot work it would be expected that she would have difficulty in other environments. The record, however, is devoid of any objective evidence of such difficulty. Instead, her condition is such that she is able to smoke at least three cigarettes over two days, including two cigarettes within an hour, without having any difficulty breathing. She can travel on an airplane across the country and to Hawaii, shop in indoor facilities, spend half a day at a spa, take yoga classes, and run for public office.

Fourth, Dr. DeMeo, an expert in occupational health, examined Reffkin in 1995 and found that she was not disabled from working in an office environment. His only restriction was that she avoid working in newly remodeled buildings. His opinion that Reffkin can

7

work in an office building has been confirmed by the three additional specialists who reviewed Reffkin's medical file.

In sum, while Reffkin may have been disabled from working at 70 Washington in 1994 while there was ongoing remodeling, the record does not support a finding that ten years later she cannot work in any closed office environment.

Reffkin's arguments to the contrary are not persuasive. The Court agrees that Reffkin's medical status has not changed dramatically since defendant reinstated her benefits in late 1996, although the fact that she took up smoking without exacerbating her condition does indicate that if she was previously disabled her condition has improved; in any event, ERISA does not require defendant to prove that Reffkin's condition has changed since it last approved her benefits. See Ellis v. Liberty Life Assur. Co. of Boston, 394 F.3d 262, 274 (5th Cir. 2004). It is sufficient that the administrative record demonstrates that as of January 2004 Reffkin was not totally disabled. The social security disability benefits cases cited by Reffkin are inapplicable.

Reffkin's argument as to the meaning of "total disability" is somewhat hard to follow. The policy provides that an employee is totally disabled if she "is continuously prevented from engaging in any and every employment, occupation or business for compensation, gain or profit, for which he is, or may become, reasonably fitted by education, training or experience." As Reffkin's assertion that she cannot work in any office building is not supported by the record, it follows that Reffkin, who previously worked as a supervisor of life insurance agents, is not continuously prevented from working as a managerial office employee.

Her reliance on her treating physician, Dr. Tufft, is also misplaced. The Court has already explained why Dr. Tufft's opinion is not persuasive and, in any event, neither the Court nor defendant is required to give Dr. Tufft's opinion any special weight. See Jordan v. Northrop Grumman Corp. Welfare Ben. Plan, 370 F.3d 869, 878-79 (9th Cir. 2004). Dr. Taiwo, defendant's consulting physician, did not find that Reffkin could not work in a closed office environment; to the contrary, he concluded that Reffkin could not work in an

8

environment in which she would be exposed to dust, fumes, vapors or smoke. Reffkin has not pointed to any evidence that suggests that she would be exposed to any more "dust, fumes, vapors or smoke" in a non-smoking office building than she would be exposed to in a yoga studio, a day spa, an airplane, or while smoking a cigarette.

The labor market surveys also do not show that Reffkin is totally disabled. The first survey assumed that Reffkin could only work at home; as is discussed above, the record does not support such a limitation. The second survey assumed that Reffkin could not work in any newly-remodeled or new buildings. Despite these limitations, which are not supported by objective medical evidence, the survey still found 15 currently available positions, four of which paid as much as Reffkin's former employment.

## CONCLUSION

The Court finds that Reffkin suffers from asthma which was exacerbated in 1994 when she was working in a building which was undergoing remodeling. The administrative record does not demonstrate, however, that Reffkin cannot work in any office building, including a closed office building. The Court therefore finds that Reffkin is not totally disabled within the meaning of the policy. Judgment shall be entered in favor of defendant and against plaintiff.

**IT IS SO ORDERED.**

Dated: August 29, 2005

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE